HARRIS, J.
Upon the divorce of the parties, the wife became the owner of a half interest in the marital home which had previously been damaged by fire. Because she had a serious drug and alcohol problem and preferred cash to an interest in the home, the wife accepted a Stipulation of Modification by which she agreed to waive alimony and convey her interest in the property to the husband in exchange for $50,000 payable on or before March 1, 1998. The trial court approved this stipulation at that time and has again, in the order here under appeal, held the stipulation to be a valid contract. But the court, finding the husband had breached the agreement, set the stipulation aside.
The husband had arranged for a mortgage to pay his obligation to his wife. Because there were liens placed on the property by the City of Melbourne because of the unrepaired fire damage, the liens would have had to be satisfied before the mortgage could close.. Since the City indicated the hens would be released upon the fire damage being repaired, the husband desired to save the money represented by the liens by making the improvements pri- or to closing the mortgage. He would be able to do this by using an inheritance to make the improvements if his wife would agree to an extension of the due date of his obligation to her. He asked her for the extension until the house repairs were completed and testified that she gave her consent. Her testimony was as follows:
Richard told me what he needed to do, how he couldn’t get the mortgage ... He told me he couldn’t pay me the money, because he couldn’t get the mortgage unless he paid the fine. I never agreed to wait until the house was done. I just didn’t argue with him ... If he thought it, if it made him feel good to think that, I probably let him think that,
[[Image here]]
He said it would be more convenient for him if [the $50,000] wasn’t paid ... So the thing, with years of experience in talking to my ex-husband, he believes what he says and that’s what he hears, and so if he thinks you want to agree, you don’t even have to say anything. If I — no. I never said that I would. I don’t believe that I said I would wait. No.
Q. Did you say you wouldn’t wait?
A. No.
[[Image here]]
Q. And he was left with the impression, granted you didn’t say one way or the other?
A. I probably said something, but you know I didn’t agree with it. I just thought, well, if that’s what we have got to do, I guess, that’s — you know, that’s what he thinks, but I don’t believe what he says anyway so — ¡
This testimony clearly reveals that the husband requested an extension and that the wife permitted him to believe that she had agreed. Her testimony now of a secret reservation of her consent is insufficient record support for the court to find that no extension was granted and that the husband breached the agreement.
We reverse with instructions for the court to enforce the stipulation previously approved by it.
PETERSON and THOMPSON, JJ., concur.